[No. 10762.    Department Two.    April 28, 1913.]

NONA LIVINGSTON, *Respondent*, v. GAMBLE-ROBINSON

COMMISSION COMPANY *et al., Appellants*.[1]

CORPORATIONS — STOCK—OWNERSHIP — SALES — EVIDENCE—SUFFICIENCY. In an action to recover the possession of corporate stock, held by the sheriff under attachment as the property of S., the evidence is insufficient to support plaintiff's claim of title by purchase from S., where it appears from her testimony that she paid for the stock in bills, received from time to time by mail from her father, during several months, and kept on her person until she had accumulated $2,300, her memory was very faulty and her story improbable, and it appears that she and S. sustained confidential relations to one another, that the stock was held as collateral for the note of S., who sought its release, refusing all cash offers, and finally traded in some real estate, causing the stock to be transferred to plaintiff, whereupon they both left the state, there being many other sidelights on the story giving it the appearance of untruth.

Appeal from a judgment of the superior court for Spokane county, Grady, J., entered June 11, 1912, upon findings in favor of the plaintiff, after a trial on the merits before the

[1]Reported in 131 Pac. 818.

court without a jury, in an action to recover corporate stock held under a writ of attachment.    Reversed.

*Tolman & King*, for appellants.

*O. B. Setters* and *V. T. Tustin*, for respondent.

MORRIS, J.—Action to recover possession of 333 shares of the capital stock of the International Casualty Company, held by the sheriff of Spokane county under a writ of attachment against the property of Thomas Stevenson, issued in an action brought by appellant company against Stevenson et al.   The court below sustained the claim of respondent to the ownership of the stock, and the commission company appeals.

Respondent's claim is based upon her contention that she purchased the stock from Stevenson prior to its attachment, paying full cash value therefor.   To sustain her claim she testifies that, about a year prior to the time of her purchase, her father made her a gift of $1,000, in bills of various denominations, and that she carried this money continually on her person; that about seven months previous to the trial, she first met Stevenson; that at the time she was living with her parents, but cannot remember where, except that it was at one or the other of two hotels at Spokane; that she was then working attending the cigar stand at the Victoria hotel, at Spokane, for which she received twelve dollars a week; that about August 1 she went to Wenatchee with Stevenson, and entered his employ as a bookkeeper; that during all this time her father, who was at Toronto, was in the habit of writing her about twice a week, and that in about every letter he would inclose a bill which she added to the amount on her person, until she had accumulated, at the time of the purchase of the stock, $2,300, which was the amount paid Stevenson on various days from October 2 to October 21.   She does not remember how often the father sent this money or how much he sent at a time, except she recalls one instance when he sent a $100 bill and another

when he sent a $50 bill. In one place she says this money was sent her because she asked for it; in another, the sending was voluntary on the part of the father; that since she purchased the stock, the regularity of these remittances has ceased, and that for the five months intervening between the purchase and the trial, the father had only sent her $100. The father does not seem to have any business, and we know nothing of him except her statement that he was the bountiful source of her wealth.

At the time she was negotiating for the purchase of this stock, Stevenson was defendant in an action in the superior court of Spokane county, which ripened into judgment against him for $913 on October 28. The appellant company was also seeking to obtain an adjustment of its claim against him. He was apparently anxious to dispose of this stock, but would consider only cash offers. The stock at the time was held as collateral to his note. He made arrangements with the holder of the note to accept some real estate in payment of the note, and the stock being thus released, directed its transfer to the respondent. As soon as the transfer was made, respondent and Stevenson both left Spokane for British Columbia.

There are many sidelights on this story of respondent's that give it an appearance of untruth. We cannot refer to all of them. It is evident the relation between respondent and Stevenson was a very friendly one. After the return from Wenatchee, her apartments seem to have been his business headquarters, and she seems not to have been disturbed, or thought it strange, that inquiries should be made for him at her apartments as early as nine o'clock in the morning. Respondent seems to have had a very bad memory of everything except the fact that her father was continually sending her this money. She cannot remember the places in which she lived at various times while she was receiving this money; and when she does remember, her memory sometimes proves faulty. For instance, she testifies she received

twelve dollars a week while working at the Victoria hotel cigar stand, while her employer remembers it as eight dollars. She produces a witness who did some sewing for her, to whom she loaned $600 for use in buying a home. After keeping the money two or three months, the witness changed her mind about buying the home, and repaid the money to respondent on the same day respondent paid Stevenson $600. This witness thought at first that she saw respondent give the $600 to Stevenson, but upon subsequent examination recalled that all she knew about it was that, when she handed the money to respondent, respondent went into an adjoining room and telephoned, and that shortly thereafter Stevenson came up, and that respondent and Stevenson then went into the adjoining room, and that she supposed the money was then given to Stevenson because respondent showed her 333 shares of stock and told her she had invested her money in this stock. It seems just a little strange that, although respondent returned to Spokane from Wenatchee about October 1, and the scheme of investing this $600 was given up prior to that time, and respondent informed of that fact, yet no demand is made for the return of the money, and the witness who had borrowed it, without security of any kind, is permitted to retain it until the day when that sum is required to be produced to make the final payment on the purchase of this stock.

In fact, without saying more, the whole story of these various transactions is so improbable that we are not impressed with its truth, and the judgment is reversed.

Crow, C. J., Main, and Ellis, JJ., concur.